UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| DUWAN PITTMAN, | : | CASE NO. 18-68220-PMB |
| | : | |
| Debtor. | : | |
| | : | |

**MOTION FOR ORDER AUTHORIZING SETTLEMENT BETWEEN TRUSTEE, METRO CITY BANK, AND CHICAGO TITLE INSURANCE COMPANY UNDER RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

COMES NOW S. Gregory Hays, Chapter 7 Trustee ("**Trustee**") for the bankruptcy estate (the "**Bankruptcy Estate**") of Duwan Pittman ("**Debtor**"), by and through the undersigned counsel, and files his *Motion for Order Authorizing Settlement between Trustee, Metro City Bank, and Chicago Title Insurance Company under Rule 9019 of the Federal Rules of Bankruptcy Procedure* (the "**Settlement Motion**"). In support of the Settlement Motion, Trustee respectfully shows the Bankruptcy Court as follows:

**Jurisdiction and Venue**

1. This Bankruptcy Court has jurisdiction over this Settlement Motion under 28 U.S.C. §§ 157 and 1334. Venue of this case in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought in this Settlement Motion is Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). This Settlement Motion is a core proceeding under 28 U.S.C. § 157(b)(2).

**Background**

2. On October 31, 2018 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (as

15138610v1

amended, modified, or supplemented, "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division ("**Bankruptcy Court**"), initiating Chapter 7 Case No. 18-68220-PMB (the "**Bankruptcy Case**").

3. On the Petition Date, Debtor was the owner of record of certain real property with a common address of 5521 Marbut Road, Lithonia, DeKalb County, Georgia 30058 (the "**Property**").

4. Shortly after the Petition Date, Trustee was appointed the Chapter 7 trustee and remains in that capacity.

5. On or about January 15, 2016, Debtor executed a security deed (the "**Security Deed**"), through which Debtor granted a first position security interest in the Property to Metro City Bank ("**Metro City**").

6. On January 28, 2016, Metro City caused the Security Deed to be recorded in the real property records of the Superior Court of DeKalb County, Georgia (the "**Real Estate Records**") beginning at Page 311 of Deed Book 25375.

7. In connection with the loan transaction related to the Security Deed, Chicago Title Insurance Company ("**CTIC**") issued a title insurance policy under which Metro City is the insured (the "**Policy**").

8. Trustee asserts that the Security Deed was not properly attested, and thus, any transfer arising out of its execution or recordation is avoidable and recoverable by Trustee for the benefit of the Bankruptcy Estate, under 11 U.S.C. §§ 544, 550, and 551 (the "**Attestation Issues**").

9. Metro City contests Trustee's claims related to the avoidability and recoverability of any transfer arising out of the execution or recordation of the Security Deed.

2

15138610v1

**The Proposed Settlement**

10. Following negotiations, Trustee, Metro City, and CTIC (collectively, the "**Parties**") have reached an agreement to resolve the Attestation Issues raised by Trustee and have entered a Settlement Agreement (the "**Settlement Agreement**") in this regard, subject to Court approval. A copy of the Settlement Agreement is attached as Exhibit "A" to this Settlement Motion and is incorporated herein by reference. Significant terms of the Settlement Agreement follow:[1]

  a. Within ten (10) business days of the Settlement Approval Order becoming final and the provision of a proper W-9 by Trustee to Metro City, Metro City's title insurer shall pay to Trustee $42,500.00 (the "**Settlement Funds**") in one lump sum payment by delivering an official check to Trustee in the amount of $42,500.00 made payable as follows: "S. Gregory Hays, Trustee (Pittman)."

  b. Effective upon the Settlement Approval Order becoming a final order, the Security Deed shall be deemed properly perfected as of its recording on January 28, 2016, and Metro City, or its authorized representative, shall be entitled to re-record in the Real Estate Records a copy of the Security Deed, a copy of the Settlement Approval Order, or any other document that it deems reasonably necessary to properly perfect its first priority security interest in the Property.

  c. Within ten (10) business days of the later of: (a) Trustee's closing a sale of the Property, or (b) the Settlement Approval Order becoming final, Trustee shall pay to Metro City $59,039.23 from the proceeds of the sale of the Property as full and final payment of its first position security interest in the Property (the "**$59,039.23 Payment**"). For the avoidance of doubt, Trustee's obligation to make the $59,039.23 Payment to Metro City shall arise if and only if Trustee closes a sale of the Property, following appropriate authority from the Bankruptcy Court.

  d. Effective upon Trustee's receiving the $42,500.00 Settlement Funds in good funds and the Settlement Approval Order becoming a final order, and except for the rights, duties, and obligations created or preserved

---

[1] The following is a summary of the Settlement Agreement and is not intended to be comprehensive. To the extent that anything in this summary is contrary to the terms of the Settlement Agreement, the Settlement Agreement shall control.

      under the Settlement Agreement, Trustee releases, acquits, and forever discharges Metro City from any and all Claims (as defined in Section 9 of the Settlement Agreement) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, that Trustee may have or claim to have against Metro City prior to the Effective Date.

   e. Effective upon the Settlement Approval Order becoming a final order, and except for the rights, duties, and obligations created or preserved under the Settlement Agreement, Metro City releases, acquits, and forever discharges Trustee and the Bankruptcy Estate and each and every past and present agent, servant, employee, representative and attorney of Trustee or the Bankruptcy Estate from any and all Claims (as defined in Section 9 of the Agreement) of any kind, character or nature whatsoever, known or unknown, fixed or contingent, that Metro City or CTIC may have or claim to have against Trustee or the Bankruptcy Estate prior to the Effective Date.

   f. Effective upon the Settlement Approval Order's becoming a final order, the parties stipulate and agree that, by virtue of the payment of the Settlement Funds, CTIC shall have a non-priority, unsecured claim against the Bankruptcy Estate, which claim shall be in the amount of $42,500. CTIC's claim shall be subordinate to, and receive payment after, any and all allowed and timely filed claims.

   g. Except for the $59,039.23 Payment set forth in Section 2.4 of the Settlement Agreement, Trustee and Metro City stipulate and agree that Metro City shall not have a claim under Section 502(h) of the Bankruptcy Code, or any other applicable provision, in the Bankruptcy Case for or on account of payment of the Settlement Funds, or for any reason, and that neither Metro City nor any of its affiliates, agents, principals, or subsidiaries shall receive a distribution from the Bankruptcy Estate as a result of payment of the Settlement Funds.

   h. If Trustee closes a sale of the Property, then to the extent that the Settlement Payment increases the moneys disbursed by Trustee in the Bankruptcy Case, the amount of that increase shall be disregarded for purposes of calculating the limit of Trustee's compensation under 11 U.S.C. § 326.

### Relief Requested

11.    By this Settlement Motion, Trustee requests that the Bankruptcy Court approve the Settlement Agreement between the Parties.

15138610v1

### Basis for Relief

12. Federal Rule of Bankruptcy Procedure 9019(a) provides, in pertinent part, that "[o]n motion by Trustee and after notice of a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). The standard in this Circuit for determining whether to approve a compromise or settlement pursuant to Rule 9019(a) is set forth in *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544 (11th Cir. 1990), *cert. denied*, 498 U.S. 959 (1990), in which the Eleventh Circuit stated as follows:

> When a bankruptcy court decides whether to approve or disapprove a proposed settlement, it must consider:
>
> > (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id.* at 1549. In making its evaluation, a court must not rest its approval of the settlement on a resolution of the ultimate factual and legal issues underlying the compromised disputes. *In re Teltronics Servs., Inc.*, 762 F.2d 185, 189 (2d Cir. 1985). Rather, the court should consider the probable outcome of the litigation, including its advantages and disadvantages, and make a pragmatic decision based on all equitable factors. *Florida Trailer and Equip. Co. v. Deal,* 284 F.2d 567, 571 (5th Cir. 1960).[2]

13. The proposed settlement between the Parties is the product of arms' length negotiations and reflects the Parties' analysis and consideration of the relevant legal, factual, and economic issues.

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

5

15138610v1

14. Given the potential expense of litigating the claims raised by Trustee and the contingent nature of the same, in the event that the claims that are proposed to be settled are instead prosecuted, the amount of time that such litigation will require, the delay before the final outcome is known (including the time necessary for any potential appeals), and the complexity and uncertain resolution of factual and legal disputes, settlement on the terms described in the Settlement Agreement is a proper exercise of the Trustee's business judgment and in the best interests of the Bankruptcy Estate.

15. Under the standard set forth above and for the reasons previously detailed in this Settlement Motion, Trustee urges that this Bankruptcy Court approve the Settlement Agreement.

WHEREFORE, Trustee respectfully requests that the Bankruptcy Court enter an Order (i) granting this Settlement Motion; (ii) authorizing Trustee to take actions reasonably necessary to effectuate the terms of the Settlement Agreement; and (iii) granting to the parties such other and further relief as the Court deems just and appropriate.

Respectfully submitted, this 24th day of June, 2020.

ARNALL GOLDEN GREGORY LLP
*Attorneys for Trustee*

By: */s/ Michael J. Bargar*
    Michael J. Bargar
    Georgia Bar No. 645709
    michael.bargar@agg.com

171 17th Street, NW, Suite 2100
Atlanta, GA 30363
(404) 873-8500

## EXHIBIT "A" FOLLOWS

Case 18-68220-pmb Doc 60 Filed 06/24/20 Entered 06/24/20 16:55:28 Desc Main
Document Page 7 of 16

15138610v1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("**Agreement**") dated as of June 23, 2020 (the "**Effective Date**"), is entered between S. Gregory Hays, as Chapter 7 Trustee ("**Trustee**") for the bankruptcy estate (the "**Bankruptcy Estate**") of Duwan Pittman ("**Debtor**"); Metro City Bank ("**Metro City**"); and Chicago Title Insurance Company ("**CTIC**").

### Background

1. On October 31, 2018 (the "**Petition Date**"), Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (as amended, modified, or supplemented, "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division ("**Bankruptcy Court**"), initiating Chapter 7 Case No. 18-68220-PMB (the "**Bankruptcy Case**").

2. On the Petition Date, Debtor was the owner of record of certain real property with a common address of 5521 Marbut Road, Lithonia, DeKalb County, Georgia 30058 (the "**Property**").

3. Shortly after the Petition Date, Trustee was appointed the Chapter 7 trustee and remains in that capacity.

4. On or about January 15, 2016, Debtor executed a security deed (the "**Security Deed**"), through which Debtor granted a first position security interest in the Property to Metro City Bank.

5. On January 28, 2016, Metro City Bank caused the Security Deed to be recorded in the real property records of the Superior Court of DeKalb County, Georgia (the "**Real Estate Records**") beginning at Page 311 of Deed Book 25375.

6. In connection with the loan transaction related to the Security Deed, CTIC issued a title insurance policy under which Metro City is the insured (the "Policy").

7. Trustee asserts that the Security Deed was not properly attested and, thus, any transfer arising out of its execution or recordation is avoidable and recoverable by Trustee for the benefit of the Bankruptcy Estate, under 11 U.S.C. §§ 544, 550, and 551 (the "**Attestation Issues**").

8. Metro City Bank contests Trustee's claims related to the avoidability and recoverability of any transfer arising out of the execution or recordation of the Security Deed.

9. Following negotiations, Trustee, Metro City Bank, and CTIC (collectively, the "**Parties**") have reached an agreement to resolve the Attestation Issues raised by Trustee, subject to Bankruptcy Court approval.

Page 1 of 6

15107380v1

Accordingly, the Parties agree as follows:

1. **Background.** The recitations in the above background section are incorporated into this Agreement as if set forth fully herein.

2. **Resolution of the Attestation Issues.** Subject to approval of this Agreement by the Bankruptcy Court, following notice and the opportunity for a hearing, the Parties agree to resolve the claims and disputes between them as follows:

    2.1. *Approval of Proposed Settlement.* Within ten (10) business days after execution of this Agreement by each of the Parties, Trustee shall prepare and file the necessary pleadings, including, but not limited to, a motion pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure ("**Settlement Approval Motion**"), seeking entry of an order by the Bankruptcy Court approving the compromise and settlement contemplated herein ("**Settlement Approval Order**").

    2.2. *Payment of Settlement Funds by Metro City Bank to Trustee.* Within ten (10) business days of the Settlement Approval Order becoming final and the provision of a proper W-9 by Trustee to Metro City Bank, Metro City Bank's title insurer shall pay to Trustee $42,500.00 (the "**Settlement Funds**") in one lump sum payment by delivering an official check to Trustee in the amount of $42,500.00 made payable as follows: "S. Gregory Hays, Trustee (Pittman)."

    For the purposes of this Agreement, the Settlement Approval Order becomes final when it has been entered on the docket in the Bankruptcy Case and it (a) has not been reversed, stayed, modified or amended and as to which the time to appeal from, or to seek review or rehearing of, has expired and as to which no appeal or petition for review, rehearing or certiorari is pending; or (b) if appealed from, has been affirmed (or the appeal dismissed) and the time to appeal from such affirmance or to seek review or rehearing thereof has expired, or no further hearing, appeal or petition for certiorari can be taken or granted.

    2.3. *The Security Deed Shall be Deemed Properly Perfected.* Effective upon the Settlement Approval Order becoming a final order, the Security Deed shall be deemed properly perfected as of its recording on January 28, 2016, and Metro City Bank, or its authorized representative, shall be entitled to re-record in the Real Estate Records a copy of the Security Deed, a copy of the Settlement Approval Order, or any other document that it deems reasonably necessary to properly perfect its first priority security interest in the Property.

    2.4. *Payment of Sales Proceeds by Trustee to Metro City Bank.* Within ten (10) business days of the later of: (a) Trustee's closing a sale of the Property, or (b) the Settlement Approval Order becoming final, Trustee shall pay to Metro City Bank $59,039.23 from the proceeds of the sale of the Property as full and final payment of its first position security interest in the Property (the "**$59,039.23 Payment**"). For the avoidance of doubt, Trustee's obligation to make the $59,039.23 Payment to Metro

City Bank shall arise if and only if Trustee closes a sale of the Property, following appropriate authority from the Bankruptcy Court.

2.5. *Release by Trustee of Metro City Bank.* Effective upon Trustee's receiving the $42,500.00 Settlement Funds in good funds and the Settlement Approval Order becoming a final order, and except for the rights, duties, and obligations created or preserved under this Agreement, Trustee releases, acquits, and forever discharges Metro City Bank from any and all Claims (as defined in Section 9 of this Agreement) of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, that Trustee may have or claim to have against Metro City Bank prior to the Effective Date.

2.6. *Release by Metro City Bank and CTIC of Trustee.* Effective upon the Settlement Approval Order becoming a final order, and except for the rights, duties, and obligations created or preserved under this Agreement, Metro City Bank releases, acquits, and forever discharges Trustee and the Bankruptcy Estate and each and every past and present agent, servant, employee, representative and attorney of Trustee or the Bankruptcy Estate from any and all Claims (as defined in Section 9 of this Agreement) of any kind, character or nature whatsoever, known or unknown, fixed or contingent, that Metro City Bank or CTIC may have or claim to have against Trustee or the Bankruptcy Estate prior to the Effective Date.

2.7. *CTIC Shall Have A Non-Priority, Unsecured Claim Against the Bankruptcy Estate.* Effective upon the Settlement Approval Order's becoming a final order, the parties stipulate and agree that, by virtue of the payment of the Settlement Funds, CTIC shall have a non-priority, unsecured claim against the Bankruptcy Estate, which claim shall be in the amount of $42,500. CTIC's claim shall be subordinate to, and receive payment after, any and all allowed and timely filed claims.

2.8. *Metro City Bank Shall Receive No Additional Distribution from the Bankruptcy Estate.* Except for the $59,039.23 Payment set forth in Section 2.4 of this Agreement, Trustee and Metro City Bank stipulate and agree that Metro City Bank shall not have a claim under Section 502(h) of the Bankruptcy Code, or any other applicable provision, in the Bankruptcy Case for or on account of payment of the Settlement Funds, or for any reason, and that neither Metro City Bank nor any of its affiliates, agents, principals, or subsidiaries shall receive a distribution from the Bankruptcy Estate as a result of payment of the Settlement Funds.

2.9. *Limitation of Trustee's Compensation under 11 U.S.C. § 326.* This section 2.9 will apply only if Trustee closes a sale of the Property. In that event, then, to the extent that the Settlement Payment increases the moneys disbursed by Trustee in the Bankruptcy Case, the amount of that increase shall be disregarded for purposes of calculating the limit of Trustee's compensation under 11 U.S.C. § 326.

3. **No Admissions.** The Parties acknowledge and agree that this Agreement is being executed and delivered as part of the compromise and settlement of disputed claims and is expressly

contingent upon and subject to the approval of the Bankruptcy Court. The Parties further acknowledge and agree that this Agreement will not and may not be used or construed as an admission of any liability or responsibility to any party or to any other persons.

4. **Entire Agreement; Modification.** The Parties agree that there are no other agreements, oral or written, between or among them relating to any matters covered by this Agreement and that this Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter contained herein. The Parties further agree that this Agreement may not be altered, amended, or modified in any respect or particular whatsoever, except by a writing duly executed by Trustee and Metro City Bank, and that any material amendment is subject to Bankruptcy Court approval.

5. **Voluntary Execution of Agreement.** The Parties hereby mutually acknowledge and represent and warrant that they have been fully advised by their respective legal counsel of their rights and responsibilities under this Agreement, that they have read, know, and understand completely the contents hereof, and that they have voluntarily executed the same. The Parties further mutually acknowledge and represent and warrant that they have had input into the drafting of this Agreement and that, accordingly, in any construction to be made of this Agreement, it shall not be construed for or against either Trustee or Metro City Bank but rather shall be given fair and reasonable interpretation based on the plain language of this Agreement and the expressed intent of the Parties.

6. **Authority of Parties.** The persons executing this Agreement represent and warrant that they have the legal and institutional authority to do so on behalf of the person or legal entity for which they are signing.

7. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which is an original, and all of which constitute only one agreement between the Parties. Counterparts of this Agreement also may be exchanged via electronic transmission such as facsimile machines or computer, and any Party's signature transmitted by such electronic transmission shall be deemed to be an original signature for all purposes.

8. **No Assignment or Transfer of Released Claims.** Each Party represents and warrants that as of the date of the execution of this Agreement, it is the true and lawful owner of all right, title and interest in and to each and every Claim that will be released pursuant to this Agreement, and that it has not assigned or transferred or purported to assign or transfer, to any person, firm, corporation, association or any entity whatsoever, all or any part of the Claims.

9. **Definition of Claims.** The term "Claims" means all claims or causes of action that were asserted or could have been brought as of the Effective Date by or on behalf of any Party to this Agreement, either directly or indirectly, in respect of, in relation to, or in connection with the Bankruptcy Case.

10. **Bankruptcy Court Jurisdiction.** The Bankruptcy Court shall retain jurisdiction over the Parties for enforcement of this Agreement and any and all disputes, controversies, or claims

15107380v1

regarding the interpretation, validity, construction or other issue relating to or concerning this Agreement. An action relating to, based upon, or arising from a breach of this Agreement shall be brought only in the Bankruptcy Court which shall retain jurisdiction over the subject matter and the Parties for this purpose.

11. **Georgia Law Applicable.** This Agreement shall be governed by, and construed in accordance with, the laws of the State of Georgia, without regard to its conflict of law principles.

12. **Severability.** If any provision of this Agreement is illegal or unenforceable, that provision is severed from this Agreement and the other provisions remain in force; provided, however, that the following are central to the Agreement and may not be severed or stricken from it: (a) the payment of the Settlement Funds by Metro City Bank to Trustee required by Section 2.2; (b) the Security Deed's being deemed properly perfected as provided in Section 2.3; (c) CTIC's having a subordinated, non-priority, unsecured claim in the amount of $42,500 as provided in Section 2.7.

13. **Notices.** Any notices by Parties provided for or permitted under this Agreement, or by law, shall be in writing and shall be deemed received: (a) when personally delivered to a party, on the date of such delivery; or (b) when sent via electronic mail to a party at the electronic mail address set forth below, on the date of transmission, provided that the transmitting Party has no reasonable belief that the electronic mail was not delivered; or (c) when deposited in the United States Mail, certified and postage prepaid, addressed to such party at the address set forth below, three (3) days following the deposit of such notice in the mail. Notices shall be sent to the parties as follows

   13.1. *If to Trustee*:

   Michael J. Bargar
   Arnall Golden Gregory LLP
   171 17th Street, NW, Suite 2100
   Atlanta, GA 30363
   michael.bargar@agg.com (electronic mail)

   13.2. *If to Metro City Bank or CTIC*:

   Austin E. James
   Fidelity National Law Group
   4170 Ashford Dunwoody Road, Suite 460
   Atlanta, GA 30319
   austin.james@fnf.com (electronic mail)

   The address to which notices are to be sent may be changed by any party by providing notice of the new address as provided herein.

15107380v1

14. **Restoration**. In the event that the Bankruptcy Court denies approval of this Agreement, then, and in that event, unless otherwise agreed by the Parties in writing, this Agreement shall terminate and be null and void and have no further force or effect and the Parties shall be restored to their respective factual and legal positions which existed immediately prior to execution of this Agreement.

15. **Parties to Bear Own Costs**. Except as otherwise stated in this Agreement, each Party shall bear its own costs (including attorney's fees) incurred in connection with the negotiation, preparation, execution, and carrying out of this Agreement and any other agreements, instruments, or documents executed in accordance with the terms of this Agreement.

To evidence the Parties' agreement to this Agreement, they have executed and delivered it on the dates set forth below the signature lines, but as of the Effective Date.

**TRUSTEE**

_____
S. Gregory Hays, as and only as
Chapter 7 Trustee for the bankruptcy estate of
Duwan Pittman (Case No. 18-68220-PMB)

Dated: 6/23/2020

**METRO CITY BANK**

By:_____
  Name:
  Its:

Dated:_____


**CHICAGO TITLE INSURANCE COMPANY**

By:_____
  Name:
  Its:

Dated:_____

15107380v1

14. **Restoration**. In the event that the Bankruptcy Court denies approval of this Agreement, then, and in that event, unless otherwise agreed by the Parties in writing, this Agreement shall terminate and be null and void and have no further force or effect and the Parties shall be restored to their respective factual and legal positions which existed immediately prior to execution of this Agreement.

15. **Parties to Bear Own Costs**. Except as otherwise stated in this Agreement, each Party shall bear its own costs (including attorney's fees) incurred in connection with the negotiation, preparation, execution, and carrying out of this Agreement and any other agreements, instruments, or documents executed in accordance with the terms of this Agreement.

To evidence the Parties' agreement to this Agreement, they have executed and delivered it on the dates set forth below the signature lines, but as of the Effective Date.

**TRUSTEE**

_____
S. Gregory Hays, as and only as
Chapter 7 Trustee for the bankruptcy estate of
Duwan Pittman (Case No. 18-68220-PMB)

Dated:_____

**METRO CITY BANK**

By: _____
   Name: Farid Tan
   Its: *Chief Executive Officer*
Dated: June 22, 2020

**CHICAGO TITLE INSURANCE COMPANY**

By:_____
   Name:
   Its:

Dated:_____

15107380v1

14. **Restoration.** In the event that the Bankruptcy Court denies approval of this Agreement, then, and in that event, unless otherwise agreed by the Parties in writing, this Agreement shall terminate and be null and void and have no further force or effect and the Parties shall be restored to their respective factual and legal positions which existed immediately prior to execution of this Agreement.

15. **Parties to Bear Own Costs.** Except as otherwise stated in this Agreement, each Party shall bear its own costs (including attorney's fees) incurred in connection with the negotiation, preparation, execution, and carrying out of this Agreement and any other agreements, instruments, or documents executed in accordance with the terms of this Agreement.

To evidence the Parties' agreement to this Agreement, they have executed and delivered it on the dates set forth below the signature lines, but as of the Effective Date.

**TRUSTEE**

_____
S. Gregory Hays, as and only as
Chapter 7 Trustee for the bankruptcy estate of
Duwan Pittman (Case No. 18-68220-PMB)

Dated:_____

**METRO CITY BANK**

By:_____
   Name:
   Its:

Dated:_____

**CHICAGO TITLE INSURANCE COMPANY**

By: _____
   Name: Ulka Shriver, Esq.
   Its: Vice President

Dated: 6/23/2020

**CERTIFICATE OF SERVICE**

      This is to certify that I, Michael J. Bargar, am over the age of 18 and that I have this day served a true and correct copy of the foregoing *Motion for Order Authorizing Settlement between Trustee, Metro City Bank, and Chicago Title Insurance Company under Rule 9019 of the Federal Rules of Bankruptcy Procedure* by first class United States mail on the following persons or entities at the addresses stated:

Office of the United States Trustee
362 Richard B. Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303

Austin E. James
Fidelity National Law Group
4170 Ashford Dunwoody Road, Suite 460
Atlanta, GA 30319

S. Gregory Hays
Hays Financial Consulting, LLC
Suite 555
2964 Peachtree Road
Atlanta, GA 30305

      This 24th day of June, 2020.

                                          */s/ Michael J. Bargar*
                                          Michael J. Bargar
                                          Georgia Bar No. 645709

15138610v1